UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| STEVEN J. RUBENSTEIN, | ) | |
|---|---|---|
| | ) | Case No. 1:23-cv-96 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| AMERICAN ACADEMY OF ACTUARIES and SOCIETY OF ACTUARIES, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court are Defendants American Academy of Actuaries (the "Academy") and Society of Actuaries' (the "Society") motion to dismiss (Doc. 9), pro se Plaintiff Steven J. Rubenstein's motion to remand (Doc. 12), and Rubenstein's motion in the alternative for an extension of time to respond to the motion to dismiss (Doc. 11).

**I.  BACKGROUND**

**A.  Factual Background**

The Academy is a professional organization for actuaries, with nearly 20,000 members, and it houses the Actuarial Board for Counseling and Discipline ("ABCD"), which administers professional-ethics discipline.  (Doc. 1-1, at 8.)  A professional seeking membership in the Academy must first become a member of at least one other of the four U.S.-based professional actuarial organizations.  (*Id.* at 8–9.)  The Society is the largest of such organizations.  (*Id.* at 8.) Actuaries can be admitted to the Society by passing a series of exams.  (*Id.*)  Rubenstein passed

his first actuarial exam to become an "Associate of the Society" in 1988 and became a member of the Academy in 1989. (*Id.* at 8–9.)

In September 2015, the Academy expelled Rubenstein from its membership after he sent Academy personnel numerous vulgar emails, which the Academy determined violated the actuarial Code of Professional Conduct. (Doc. 1-1, at 16–17; Doc. 10-2.) The Society's disciplinary committee also decided to expel Rubenstein shortly thereafter. (Doc. 1-1, at 17.)

### B.     Procedural Background

#### i.     *Rubenstein I*

On November 28, 2016, Rubenstein filed his first case before this Court arising from these incidents ("*Rubenstein I*"). (Doc. 1 in Case No. 1:16-cv-475.) Rubenstein did not name the Academy or the Society as defendants in that action but instead attempted to sue the Academy by naming "the Academy Cowards" and Steven Salky—the Academy's outside counsel, whom it retained to advise it about Rubenstein—as defendants. (Doc. 9, at 11–16 in Case No. 1:16-cv-475.) The complaint defined "Defendants the Academy Cowards" as a group of defendants consisting of: (1) every Academy President, every Academy Vice President of Health Practice, and every Society President who served between 2011 and 2017; (2) every member of the ABCD; (3) the in-house counsel for the Academy and Society; (4) every member of the Society's disciplinary review committee; and (5) other various officers, presidents, and board members of the organizations. (*Id.*) The operative complaint in *Rubenstein I* attempted to allege many claims, including breach-of-contract claims against "the Academy Cowards." (Doc. 9, at 2, 91–97 in Case No. 1:16-cv-475.) On October 25, 2017, then-Judge Harry S. Mattice granted Salky's motion to dismiss for failure to state a claim, noting that Rubenstein presented his complaint "in a disorganized narrative," "[a]ny relevant facts [were] 'confusing, ambiguous,

redundant, vague, and in some respects, unintelligible[,]'" and "Plaintiff made no apparent attempt to connect factual allegations to his empty recital of claim elements." (Doc. 45, at 2–4 in Case No. 1:16-cv-475.) Even though this order resulted in complete dismissal of the claims in *Rubenstein I*, Rubenstein continued to file motions seeking relief. (*See* Docs. 46, 59, 63 in Case No. 1:16-cv-475.) Over two years after dismissal, Judge Mattice enjoined Rubenstein from filing any more motions "[i]n light of [his] continuous and extensive filings in a closed case that do not warrant relief." (Doc. 58 in Case No. 1:16-cv-475.) Rubenstein appealed *Rubenstein I* twice; the Sixth Circuit dismissed the first for lack of appellate jurisdiction and then affirmed this Court's dismissal in the second. (Docs. 70, 79 in Case No. 1:16-cv-475.)

      ii.      **Rubenstein II**

On November 13, 2017, shortly after the Court dismissed *Rubenstein I*, Rubenstein sued the Academy and the Society for defamation in the Northern District of Alabama but voluntarily dismissed that case. (Docs. 10-7–10-9.) Several months later, Rubenstein refiled his defamation claims in the Eastern District of Arkansas ("*Rubenstein II*"). (Doc. 10-10.) This complaint alleged the contents of the disciplinary notices Rubenstein received from the Academy and the Society were false. (*Id.* at 5–8.) In December 2019, the court in *Rubenstein II* granted summary judgment to the defendants, concluding the statements in the public disciplinary notices were true. (Doc. 10-11.) The Eighth Circuit dismissed Rubenstein's appeal of *Rubenstein II* for failure to prosecute. (Doc. 10-12.)

      iii.      **Rubenstein III**

While *Rubenstein II* was pending before the Eastern District of Arkansas, Rubenstein filed another case arising from these same events before this Court ("*Rubenstein III*") (Doc. 1 in Case No. 1:19-cv-189.) In this case, Rubenstein reiterated his allegations from *Rubenstein I* but

this time properly named the Academy and the Society as defendants, in addition to again naming "Academy Cowards" as a defendant. (*Id.*) Rubenstein's complaint also plainly admitted that he sought to relitigate the claims he brought in *Rubenstein I*: "Rubenstein having filed his Motion for Relief from Dismissal of [*Rubenstein I*] three days ago, for a reason given below, now files this new action based on the *same* claims . . . ." (Doc. 1, at 8 in Case No. 1:19-cv-189). In *Rubenstein III*, Judge Mattice granted the Academy's motion to dismiss for failure to state a claim on the basis that Rubenstein sought to relitigate the same claims he presented in *Rubenstein I*, so the claims were now barred by claim preclusion. (Doc. 32 in Case No. 1:19-cv-189.) The order emphasized that "Plaintiff has sued the same Defendants and, by his own lights, 'now files this new action based on the *same* claims.'" (*Id.* at 2 (quoting Doc. 1, at 8 in Case No. 1:19-cv-189).).

Rubenstein attempted to appeal this decision, even though the order was not an appealable final judgment because Rubenstein's claims against the Society, which had not filed a motion to dismiss, survived. (Doc. 43 in Case No. 1:19-cv-189.) The Sixth Circuit dismissed Rubenstein's notice of appeal for lack of appellate jurisdiction. (Doc. 47 in Case No. 1:19-cv-189.) The same day that the Sixth Circuit's dismissal issued, Rubenstein filed an amended notice of appeal, which again purported to appeal the nonfinal order granting the Academy's motion to dismiss. (Doc. 48 in Case No. 1:19-cv-189.) The Sixth Circuit later dismissed the amended notice of appeal for lack of appellate jurisdiction. (Doc. 54 in Case No. 1:19-cv-189.)

By this point in the litigation, the Academy had filed a motion to designate Rubenstein a vexatious litigant and enjoin him from filing additional documents in the case or new cases in the district without prior court approval. (Doc. 46 in Case No. 1:19-cv-189.) After Rubenstein filed the frivolous amended notice of appeal, Judge Mattice granted the motion in part by enjoining

Plaintiff from further filings against the Academy but declined to extend the injunction to filings related to his claims against the Society or to newly filed cases. (Doc. 52 in Case No. 1:19-cv-189.) Several months later, *Rubenstein III* was reassigned to the undersigned. (Doc. 58 in Case No. 1:19-cv-189.) The undersigned found that Rubenstein's "complaint [did] not even begin to connect its minimal and all-but-indecipherable factual content to this panoply of claims, many of which Rubenstein cannot even bring in a civil action." (Doc. 59, at 4 in Case No. 1:19-cv-189.) Therefore, pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam), the Court dismissed *Rubenstein III* with prejudice. *Apple*, 183 F.3d at 479 ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.") (citations omitted); (Doc. 59, at 4 in Case No. 1:19-cv-189).

### iv. This Action

On December 28, 2022, Rubenstein filed a verified complaint in the Chancery Court of Hamilton County, Tennessee, against the Academy and the Society based on the same events underlying each of his prior lawsuits against them. (Doc. 1-1.) On April 24, 2023, Defendants timely removed the case to this Court. (Doc. 1.) In response to the complaint, Defendants filed a joint motion to dismiss, arguing that res judicata bars this action, that Tennessee's applicable statute of limitations bars Rubenstein's claims, and, in the alternative, that the Court should declare Rubenstein a vexatious litigant and enjoin him from filing any further litigation against Defendants. (Docs. 9–10.) In response, Rubenstein moved to remand this case on the basis that this Court lacks jurisdiction because it dismissed the same claims with prejudice in *Rubenstein III*, but he argues that Hamilton County Chancery Court can still hear the claims. (Doc. 12, at 2–

5

Case 1:23-cv-00096-TRM-SKL    Document 16    Filed 07/17/23    Page 5 of 18    PageID #: 387

3.) In the motion, Rubenstein confirms that he seeks to relitigate claims previously dismissed with prejudice:

> 5. This Court then dismissed No. 1:19-cv-00189 on October 9, 2020, under *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam), finding that the claims, in essence, made no sense [Doc. 59], and "with prejudice." [Doc. 60]
>
> . . .
>
> 8. But, [the Hamilton County Chancery Court case] is the case the Defendants have 28 U.S.C. 1441(a) removed to become *this* case (No. 1:23-cv-00096-CEA-SKL), Rubenstein feels—again in the interest of convenience and economy—obligated *now* to verify that these are two of the primary claims which he at least *tried* to convey in No. 1:19-cv-00189-HSM-SKL.
>
> 9. At the very least, given this Court's dismissal order [Doc 59] and judgment [Doc 60] in No. l:19-cv-00189-HSM-SKL, Rubenstein would not have felt at all assured that he could re-bring such claims into this very same Court.
>
> 10. The upside, however, is that he is confident that, considering 28 U.S.C. 1367 and Tennessee's jurisdictional statutes and court rulings, the Hamilton County Chancery Court (into which he filed this) *does* have jurisdiction over them.

(*Id.*) In the alternative to remand, Rubenstein requests the Court extend the time in which he may respond to Defendants' motion to dismiss. (*Id.* at 4–5; Doc. 11.) Rubenstein's motion to remand (Doc. 12) is ripe for the Court's review.

## II. MOTION TO REMAND (Doc. 12)

Generally, a defendant may remove to federal court any civil action over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). "A federal district court has original diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interests." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). "[A] claim specifically less than the federal requirement should preclude removal." *Id.* (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993), *abrogated in part on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010)). The

party seeking removal carries the burden of establishing that the district court has original jurisdiction over the matter by a preponderance of the evidence, including that the amount-in-controversy requirement has been met. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). "Such a preponderance-of-the-evidence test, however, 'does not place upon the defendant the daunting burden of proving, *to a legal certainty*, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.'" *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 471 (6th Cir. 2019) (quoting *Gafford*, 997 F.2d at 159). Nonetheless, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

In this case, Rubenstein's complaint admits, and Defendants agree, that there is complete diversity between the parties. (Doc. 1-1, at 8 (alleging that Rubenstein is a Tennessee citizen, the Society is incorporated and has its principal place of business in Illinois, and the Academy is incorporated in Illinois with its principal place of business in Washington, D.C.).) Rubenstein's complaint, however, does not allege a specific amount of damages sought. (*Id.* at 20.) Rather, the complaint requests: (1) injunctive relief to restore Rubenstein's membership in the Academy and the Society; (2) compensatory damages for the alleged breaches of contract; and (3) punitive damages against the Academy and Society for their "maliciousness and fraudulence" in committing the alleged breaches. (*Id.*) Therefore, Defendants must prove by a preponderance of the evidence that Rubenstein's claims meet the amount-in-controversy requirement to avoid remand. *See Hayes*, 266 F.3d at 572.

Defendants have shown that the amount in controversy more likely than not exceeds $75,000. In his motion to remand, Rubenstein admits that he seeks to relitigate the claims he attempted to assert against the Academy and Society in *Rubenstein III* and further admits that the amount in controversy as to those claims was sufficient to support diversity jurisdiction alone, without regard to additional federal and state-law claims joined in that action. (Doc. 12, at 2.) Based on these admissions, Defendants responded that Rubenstein's "motion to remand concedes that the amount in controversy exceeds $75,000," and Rubenstein did not timely file a reply to this response. (Doc. 15, at 2.) Taken together, the Court agrees that these admissions show by a preponderance of the evidence that Rubenstein seeks more than $75,000 in damages on these re-asserted claims. (*See id.*; Doc. 12, at 2.)

Further, the Court must consider any demand for punitive damages in assessing the amount in controversy unless it is apparent to a legal certainty that they cannot be recovered. *Hayes*, 266 F.3d at 572.

> "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." . . . Applying this principle, this Court has said that, "[w]here a party seeks [equitable relief] 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'"

*Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (internal citation omitted) (first quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); and then quoting *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95–2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998)). This Court has previously found that, "in examining the jurisdictional [amount-in-controversy] question, a federal court should consider the plaintiff's motives; should look at prior lawsuits between the parties, if any; should look at awards in similar lawsuits between other parties; should consider any other evidence the defendant may have; and should exercise its

common sense." *Graham v. Champion Int'l Corp.*, No. 2:97-cv-83, 1997 WL 33487768, at *3 (E.D. Tenn. May 16, 1997).

Rubenstein seeks compensatory damages for alleged breaches of contract by Defendants, punitive damages for malice and fraud associated with the alleged breach, as well as an injunction restoring Rubenstein's membership in the Academy and the Society. (Doc. 1-1, at 20.) Based on the complaint in this case and the Court's review of the history of litigation between these parties, it is clear Rubenstein's primary motive in this lawsuit and his prior lawsuits is to secure membership in the Academy and the Society so that he may pursue a career as an actuary, which he alleges Defendants wrongfully denied him as of 2015. (*See* Doc. 1-1, at 11; Doc. 10-7, at 3; Doc. 1, at in Case No. 1:19-cv-189; Doc. 9, at 45, 142 in 1:16-cv-475.) If Rubenstein were to succeed on the merits of his claims, the compensatory damages could include lost earnings since 2015, and the value of the injunctive relief restoring his membership encompasses his potential future earnings as actuary. Exercising its common sense, *see Graham*, 1997 WL 33487768 at *3, the Court finds the value of the lost past earnings of an actuary for approximately eight years, the potential future earnings as an actuary that an injunction would allow, and punitive damages based on the extensive malice and fraud Rubenstein alleges more likely than not exceeds $75,000. Accordingly, Defendants have proven by a preponderance of the evidence that this Court has original subject-matter jurisdiction over this claim based on diversity of citizenship, and Rubenstein's motion to remand (Doc. 12) is therefore **DENIED**.

### III.     MOTION TO EXTEND RESPONSE TIME (Doc. 11)

In the alternative to remand, Rubenstein moved for an extension of time to file a response to Defendants' motion to dismiss (Doc. 11.) Federal Rule of Civil Procedure 6(b) provides:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:

> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Courts in this Circuit have found that good cause does not exist and therefore denied motions to extend response time where, as a matter of law, such response would be futile. *E.g.*, *Weathington v. City of Detroit*, No. 12-13573, 2013 WL 4027247, at *1 (E.D. Mich. Aug. 7, 2013) ("The court will deny Plaintiff's motion because any response to the motion to dismiss would be futile."); *Bumpas v. Matthew Nixon*, No. 3:08-0977, 2009 WL 3048562, at *4 (M.D. Tenn. Sept. 17, 2009) ("The plaintiff's motion for an extension of time to respond . . . is denied, because, given that his complaint is time-barred, any objections he might raise would be futile.) (emphasis omitted); *see, e.g.*, *Bolze v. Warden, FCC Coleman*, No. 3:19-cv-00369, 2019 WL 6841978, at *1 (E.D. Tenn. Dec. 16, 2019) ("[A]llowing Petitioner to file a supplemental response to Respondent's motion to dismiss would be futile. Accordingly, Petitioner's motion to do so [] will be denied.") (emphasis omitted).

      In this case, Rubenstein timely moved to extend the time in which he may file a response to Defendants' motion to dismiss, so he need only show good cause to support an extension. However, any response to the motion to dismiss would be futile because Rubenstein's claims are barred by res judicata as a matter of law. *See infra* Section IV. Rubenstein could not oppose the motion to dismiss in any meaningful way without directly contradicting what he has openly and freely acknowledged—nay, asserted—to the Court: that "these are two of the primary claims which he at least tried to convey in No. 1:19-cv-00189-HSM-SKL[,]" and, "given this Court's dismissal order [] and judgment [] in No. l:19-cv-00189-HSM-SKL, Rubenstein would not have felt at all assured that he could re-bring such claims into this very same Court." (Doc. 12, at 2–3.) A review of Rubenstein's pleadings in this and prior litigation makes clear that, to borrow his

term, he seeks merely to "re-bring" claims that have already been dismissed on the merits. (Doc. 1-1, at 7 ("Plaintiff Rubenstein . . . picks this [case] up from where the U.S. District Court for the Eastern District of Tennessee left it by, on October 8, 2023, dismissing his Civil Action No. 1:19-cv-189 . . . .") (emphasis omitted); Doc. 1, at 8 in Case No. 1:19-cv-189 ("Rubenstein . . . now files this new action based on the *same* claims . . . .").) Therefore, Rubenstein cannot show good cause to support an extension of the response time, and, accordingly, his motion (Doc. 11) to do so is **DENIED**.[1]

### IV. MOTION TO DISMISS (Doc. 9)

#### A. Standard of Law

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all

---

[1] Independently, the Court also notes that Rubenstein's long history of frivolous, repetitive litigation also strongly suggests that any response is remarkably unlikely to aid the Court in arriving at the correct decision or even to comply with Rule 11.

well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, "a motion for dismissal pursuant to Rule 12(b)(6) will be granted if the facts as alleged are insufficient to make a valid claim *or* if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (emphasis added).

**B.     Analysis**

    ***i.     Choice of Law***

In this case, Rubenstein's complaint shows on its face that his claims are barred by res judicata. (*See* Doc. 1-1, at 14–15.) Under federal law,

> the doctrine of res judicata, or claim preclusion, "mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties, with respect both

> to every matter that was actually litigated in the first case, as well as to every ground of recovery that might have been presented."

*Helfrich v. Metal Container Corp.*, 11 F. App'x 574, 576 (6th Cir. 2001) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)). When res judicata is raised by the prior judgment of a federal court sitting in diversity, the court applies the rules of preclusion of the state in which the federal court that rendered the prior judgment sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."); *Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 458 (6th Cir. 2022).

In this case, there are three prior cases with potentially preclusive effects: *Rubenstein I* and *III*, which were litigated before this Court, which sits in Tennessee, and *Rubenstein II*, which was litigated before the Eastern District of Arkansas. Accordingly, the Court analyzes the preclusive effects of the former cases under Tennessee law. While *Rubenstein II* may have preclusive effect under Arkansas law, the Court declines to reach that issue because the preclusive effect of *Rubenstein I* is dispositive. *See infra* Section IV.B.ii.b.

### ii. *Preclusive Effect of this Court's Prior Judgments*

In Tennessee, the doctrine of res judicata is an affirmative defense that bars "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 758 (6th Cir. 2003) (quoting *Am. Nat'l Bank & Tr. Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979)). The party asserting the defense of res judicata bears the burden of demonstrating:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction;
>
> (2) that the same parties or their privies were involved in both suits;

(3) that the same claim or cause of action was asserted in both suits; and

(4) that the underlying judgment was final and on the merits.

*Regions Bank v. Prager*, 625 S.W.3d 842, 847–48 (Tenn. 2021) (citations omitted).

### a. *Rubenstein III*

Rubenstein admits he attempted to assert the same claims against the same parties in *Rubenstein III*. (Doc. 12, at 2–3.) The Court ultimately dismissed *Rubenstein III* under *Apple v. Glenn* for lack of subject-matter jurisdiction. (Doc. 59, at 4 in Case No. 1:19-cv-189.) It is an open question whether a judgment dismissing a case under *Apple v. Glenn* satisfies the first and fourth elements of the claim-preclusion defense. Dismissal for lack of subject-matter jurisdiction is typically not a judgment on the merits, but dismissal under *Apple v. Glenn* occurs "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." 183 F.3d at 479. While an *Apple* dismissal is nominally for lack of subject-matter jurisdiction, its standard rests on the merits of the claims, or total lack thereof, rather than the jurisdictional statutes. *See generally CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) ("Only if the claimed protected interest is 'wholly insubstantial and frivolous' does a claim's failure on its merits turn into a jurisdictional defect.") (citing *Apple*, 183 F.3d at 479) (additional citations omitted). However, the Court need not reach this question, because the final judgment on the merits in *Rubenstein I* bars the claims in this action regardless of any preclusive effect of *Rubenstein III*. *See infra* Section IV.B.ii.b.

### b. *Rubenstein I*

In *Rubenstein I*: (1) this Court validly exercised federal-question jurisdiction and supplemental jurisdiction over Rubenstein's claims; (2) Rubenstein asserted the same breach-of-contract claims arising out of his expulsion from the Academy and Society as he asserts in this case, and (3) the Court dismissed that case for failure to state a claim, which is a final judgment

on the merits. (*See* Doc. 9, at 2, 91–97 in Case No. 1:16-cv-475; Doc. 45 in Case No. 1:16-cv-475); 28 U.S.C. §§ 1331, 1367; *Creech v. Addington*, 281 S.W.3d 363, 378 (Tenn. 2009) ("[A]n order granting a motion to dismiss for failure to state a claim upon which relief can be granted under Tennessee Rule of Civil Procedure 12.02(6) is an adjudication on the merits.") (citation omitted); *Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989) ("Tennessee Rule of Civil Procedure 12.02(6) is based upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. . . . In the federal courts, a dismissal pursuant to Rule 12(b)(6) is considered a decision on the merits with full res judicata effect.") (citations omitted). The issue, then, is whether the "same parties or their privies were involved in both suits." *See Regions Bank*, 625 S.W.3d at 847–48.

"In the context of res judicata, 'privity' means 'an identity of interests relating to the subject matter of the litigation, and it does not embrace relationships between the parties themselves.'" *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 735 (Tenn. Ct. App. 2008) (quoting *Carson v. Challenger Corp.*, No. W2006–00558–COA–R3–CV, 2007 WL 177575, *3 n.3 (Tenn. Ct. App. Jan. 25, 2007)). "The existence of privity or identity of interest depends upon the facts of each case." *Id.* (citing *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 181 (Tenn. Ct. App. 2000)). In this case, "Defendants the Academy Cowards" in *Rubenstein I*, which consisted of current and former high-level officers, in-house counsel, and disciplinary board members of both the Academy and the Society, are, at a minimum, privies of the Academy and the Society. (*See* Doc. 9, at 11–16 in Case No. 1:16-cv-475.) The allegations in *Rubenstein I* demonstrate that Rubenstein sued the officers of the Academy and the Society in their representative capacities as officers and agents of these organizations because the allegations are directed solely at the organizations' official actions—that is, expelling Rubenstein from their memberships—rather than at personal disputes with the officers in their individual capacities.

(*See id.* at 88–138); *Craig v. Peoples Cmty. Bank*, No. E201600575COAR3CV, 2016 WL 7495185, at *6 (Tenn. Ct. App. Dec. 30, 2016) (holding that the president of a bank was a privy of the bank for res judicata purposes where the allegations were directed at the bank's actions rather than at the president personally). Therefore, with respect to *Rubenstein I*, the elements of res judicata are met, and this action is barred. This conclusion is further supported by the fact that, in *Rubenstein III*, Judge Mattice granted the Academy's motion to dismiss due to the preclusive effect of the Court's disposition of the same claims in *Rubenstein I*. (Doc. 32, at 2–3 in Case No. 1:19-cv-189.)[2] Accordingly, Defendants' motion to dismiss (Doc. 9) will be **GRANTED**.

### V. VEXATIOUS-LITIGANT STATUS

In their motion to dismiss, Defendants also move the Court to declare Rubenstein a vexatious litigant and enjoin him from filing any more claims arising out of the events alleged in this case and in *Rubenstein I–III* against them or their privies. (Doc. 10, at 16–18.) Rubenstein has now brought actions based on the same events five times. Four of those suits have now been dismissed as frivolous or devoid of merit, and Rubenstein voluntarily dismissed the fifth. Indeed, even in his *first* case on these facts, Rubenstein continued to file motions seeking relief for over two years after dismissal, and the presiding judge found an injunction from further filings appropriate "[i]n light of [his] continuous and extensive filings in a closed case that do not warrant relief." (Doc. 58 in Case No. 1:16-cv-475.) In *Rubenstein III*, the Court again had to

---

[2] Though the Court did not contemporaneously dismiss Rubenstein's claims against the Society based on res judicata, this is attributable to the fact that the Society had not filed a motion to dismiss, and the Court ultimately dismissed *Rubenstein III* under *Apple* before further litigation of the merits occurred. (*See* Doc. 59 in Case No. 1:19-cv-475.)

enjoin Rubenstein from filing additional frivolous papers in the case. (Doc. 52 in Case No. 1:19-cv-189.)

Rubenstein has also taken numerous frivolous appeals of these cases. He has filed three notices of appeal prematurely, and each case was dismissed for lack of appellate jurisdiction. (Docs. 32, 43, 47, 48, 54 in Case No. 1:19-cv-189; Doc. 70 in Case No. 1:16-cv-475.) The Sixth Circuit ultimately affirmed the Court's dismissal of *Rubenstein I* for failure to state a claim, and the Eighth Circuit dismissed Rubenstein's appeal of *Rubenstein II* because he failed to prosecute it. (Doc. 10-12; Doc. 79 in Case No. 1:16-cv-475.)

Pursuant to Standing Order 18-04, the judges of this District have delegated to the chief judge—the undersigned—the authority to enter injunctions "limiting filings by individuals who have abused the legal process and adjudicate any matters arising from those injunctions." The standing order further provides that "[d]istrict judges will refer litigants with a history of repetitive, vexatious, or frivolous litigation to the chief judge to determine whether an injunction is appropriate." *Id*. Plaintiff qualifies for such a referral.

## VI. CONCLUSION

For these reasons, the Court hereby **GRANTS** Defendants' joint motion to dismiss (Doc. 9) and **DENIES** Rubenstein's motion to remand (Doc. 12), as well as his motion in the alternative for extension of time to respond to the motion to dismiss (Doc. 11). Accordingly, the Court **ORDERS** that this action be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. Additionally, pursuant to Standing Order 18-04, Rubenstein is hereby **REFERRED** to the undersigned for review and determination of whether an injunction is appropriate based on his repetitive and frivolous filings in this and other cases before the Court.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH
CHIEF UNITED STATES DISTRICT JUDGE**